O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOFASCO OF AMERICA, INC., | CV 07-4120 ABC (FMOx) |
| Plaintiff, | ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT |
| v. | |
| ATICO INTERNATIONAL, U.S.A., INC., et al., | |
| Defendants. | |

Pending before this Court is a "Motion for Summary Judgment of Noninfringement or, in the Alternative, for Partial Summary Judgment" ("Motion"), filed on May 21, 2008, by Defendants Atico International USA, Inc. and Longs Drug Stores California, Inc. ("Defendants"). Plaintiff Tofasco of America, Inc. ("Plaintiff" or "Tofasco") filed its opposition to the Motion on June 5, 2008; Defendants filed their reply on June 12, 2008.  The Court finds this Motion appropriate for submission without oral argument.  See Fed. R. Civ. P. 78(b); Local Rule 7-15.  Having considered the materials submitted by the parties and the case file, the Court hereby GRANTS Defendants' Motion, for the reasons set forth below.

## I.   BACKGROUND

United States Patent No. 5,975,626 ("'626 patent"), issued on November 2, 1999, involves a cross-member support for foldable furniture.  In general, it claims a particular apparatus for supporting the legs of a foldable chair or stool.  The legs pass through inclined slots in the cross-member support when the chair is unfolded.  The cross-member support also contains vertical holes for the legs to pass through when the chair is folded.  The cross-member support is designed to allow the legs to pivot from the unfolded, inclined position to the folded, vertical position.

Plaintiff is the assignee of the '626 patent.  On June 25, 2007, it filed this action against Atico International, U.S.A., Inc. ("Atico"), Williams-Sonoma, Inc. ("Williams-Sonoma"), Longs Drug Stores California, Inc. ("Longs"), and Motorsports Authentics, Inc. ("Motorsports"), as either producers or sellers of products that infringe upon the '626 patent.  Tofasco's First Amended Complaint ("FAC"), filed August 3, 2007, includes one cause of action, for patent infringement, and seeks a declaration that the claims of the '626 patent are valid and enforceable, and that each of the defendants willfully infringed the patent's claims.  The FAC seeks injunctive relief against further infringement, as well as treble damages for the alleged past willful infringement.  All four defendants assert affirmative defenses of both patent invalidity and noninfringement. Motorsports and Williams-Sonoma assert counterclaims seeking declaratory judgment on the same grounds; Atico brings a counterclaim asserting that the '626 patent is unenforceable due to Tofasco's inequitable conduct.

On April 8, 2008, the Court issued its order (the "Claim

1  Construction Order") construing the claims of the '626 patent pursuant

2  to <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 976 (Fed. Cir.

3  1995).  The Court construed six of the seven claim terms disputed by

4  the parties as follows:

5  1.   "At least two vertical connecting holes" as "two or more openings

6       extending through the thickness of the cross-member supporter

7       body, the axes of which are substantially perpendicular to the

8       top surface of the cross-member supporter body."

9  2.   "At least two inclined supporting holes" as "two or more openings

10      extending through the thickness of the cross-member supporter

11      body, the axes of which are neither vertical nor horizontal."

12 3.   "At least two supporting through slots" as "two or more openings

13      in the cross-member supporter body defined by the combination of

14      a vertical connecting hole and an inclined supporting hole."

15 4.   "Substantially equal to" as "close to equal such that the stem is

16      rigidly and firmly supported on the groove surface with minimal

17      lateral movement."

18 5.   "Supporting groove surface" as "an interior surface of a

19      supporting through slot, defined by the inclined supporting hole,

20      which partially envelops the stem such that the stem is rigidly

21      and firmly supported with minimal lateral movement."

22 6.   "Perpendicular to said supporter body" as "the axes of the

23      vertical connecting holes are at a 90 degree angle to a plane of

24      the supporter body defined by the top or bottom of the supporter

25      body."

26 (Claim Construction Order at 14-15.)  Further, the Court held that the

27 term "said two supporting through slots are parallelly provided" did

28 not need further construction at that time.  (<u>Id.</u> at 14.)

3

1    Following claim construction, on May 21, 2008, Atico and Longs

2  moved for summary judgment of noninfringement.[1]  Defendants argue that

3  the only product specifically identified by Tofasco as allegedly

4  infringing the '626 patent is a cross-member supporter ("CMS") used in

5  folding chairs imported by Atico and sold by Longs (the "Atico CMS").

6  Defendants reference descriptions, photographs, and physical examples

7  of the Atico CMS submitted to the Court (without objection) in

8  connection with the Markman hearing in April 2008.  Plaintiff appears

9  to object to the Court's consideration of evidence submitted in

10  connection with the Markman hearing, but provides no basis for such an

11  objection.  Further, Plaintiff has itself submitted an actual chair,

12  purchased at Longs, which it claims includes the infringing Atico CMS.

13  (Declaration of Gary J. Gorham in Supp. of Pl. Tofasco of America,

14  Inc.'s Opp'n to Defs. Atico Int'l, U.S.A., Inc.'s and Longs Drug

15  Stores Corp.'s Mot. for Summ. J. of Noninfringement, filed June 5,

16  2008 ("Gorham Decl."), at ¶ 3; id. at Exhs. D-F.)  From the

17  photographs and other evidence submitted by Defendants (see, e.g.,

18  Declaration of Robert J. Scheffel in Supp. of Atico's and Longs' Mot.

19  for Summ. J. of Non-Infringement, Or, in the Alternative, Mot. for

20  Partial Summ. J., filed May 22, 2008 ("Scheffel Decl."), at ¶ 4; id.

21  at Exh. C; Reply Decl. of Floyd B. Chapman in Supp. of Defs.' Mot. for

22  Summ. J. of Non-Infringement, filed June 12, 2008 ("Chapman Reply

23  Decl."), at ¶¶ 3-4; id. at Exh. A), it is clear that the CMS on the

24  allegedly infringing chair submitted by Plaintiff is the same device

25  Defendants have consistently identified as the only CMS used by

26

27    [1]All four defendants concurrently moved for summary judgment
   on the grounds that the '626 patent is invalid; that motion will
28  be addressed in a separate order.

4

1  Defendants in any of their products (see, e.g., Chapman Reply Decl. at

2  ¶ 7).

3      In fact, Plaintiff does not dispute that the purportedly

4  infringing CMS it has submitted is the same device previously

5  identified by Defendants as the Atico CMS.  Rather, Plaintiff argues

6  that there may be other evidence out there somewhere that Defendants

7  have used other CMS devices.  Accordingly, Plaintiff claims that

8  Defendants' summary judgment motion is premature, and that a delay is

9  warranted under Federal Rule of Civil Procedure 56(f) to enable it to

10 keep searching for some such evidence.  However, Plaintiff has already

11 had more than nine months to conduct discovery in this case -- plenty

12 of time in which to discover some evidence at least suggesting that

13 Defendants used other forms of CMS.  To date, though, Plaintiff has

14 apparently found none.

15     Furthermore, regardless of whether Defendants may have ever sold

16 folding furniture with some other type of CMS device, the question of

17 whether the identified Atico CMS infringes the '626 patent is squarely

18 presented now.  Defendants make clear that the scope of the Motion is

19 directed to the Atico CMS, and not some unidentified, hypothetical

20 device.  (See Defs.' Reply Mem. in Supp. of Their Mot. for Summ. J. of

21 Non-Infringement, or, in the Alternative, Mot. for Partial Summ. J.

22 ("Defs.' Reply"), at 7.)  Thus, the (remote) possibility that

23 Plaintiff may yet turn up evidence that Defendants used some other CMS

24 device is irrelevant to the current Motion, and no cause to delay its

25 resolution.

26     Nor do any of the other ongoing discovery disputes to which

27 Plaintiff points appear to have anything to do with the issue of

28 infringement.  They may have some bearing on the question of damages,

1  or Defendants' willfulness, but not the only question at issue here --

2  whether the Atico CMS infringes the '626 patent.  Thus, Plaintiff's

3  request for a Rule 56(f) delay is DENIED.

4       In addition, Plaintiff asserts numerous objections to the

5  evidence presented in support of Defendants' Motion.  None of these

6  objections is well-taken.  The prosecution history of the '626 patent

7  and the various prior art patents have been sufficiently presented to

8  the Court, and are fit for examination in connection with the present

9  Motion.

10                        **II.   LEGAL STANDARD**

11       Summary judgment shall be granted where "the pleadings, the

12  discovery and disclosure materials on file, and any affidavits show

13  that there is no genuine issue as to any material fact and that the

14  movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

15  56(c).  The moving party has the burden of demonstrating the absence

16  of a genuine issue of fact for trial.  Anderson v. Liberty Lobby,

17  Inc., 477 U.S. 242, 256 (1986).

18       If, as here, the non-moving party has the burden of proof at

19  trial, the moving party has no burden to negate the opponent's claim.

20  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party

21  does not have the burden to produce any evidence showing the absence

22  of a genuine issue of material fact.  Id. at 325.  "Instead, . . . the

23  burden on the moving party may be discharged by 'showing' -- that is,

24  pointing out to the district court -- that there is an absence of

25  evidence to support the nonmoving party's case."  Id.  Once the moving

26  party satisfies this initial burden, "an opposing party may not rely

27  merely on allegations or denials in its own pleading; rather, its

28  response must . . . set out specific facts showing a genuine issue for

1  trial."  Fed. R. Civ. P. 56(e)(2) (emphasis added).

2      A "genuine issue" of material fact exists only when the nonmoving

3  party makes a sufficient showing to establish the essential elements

4  of that party's case, and on which that party would bear the burden of

5  proof at trial.  Celotex, 477 U.S. at 322-23.  An issue of fact is a

6  genuine issue if it reasonably can be resolved in favor of either

7  party.  Anderson, 477 U.S. at 250-51.  "[M]ere disagreement or the

8  bald assertion that a genuine issue of material fact exists" does not

9  preclude summary judgment.  Harper v. Wallingford, 877 F.2d 728, 731

10  (9th Cir. 1989).  "The mere existence of a scintilla of evidence in

11  support of the plaintiff's position will be insufficient; there must

12  be evidence on which the jury could reasonably find for the

13  plaintiff."  Anderson, 477 U.S. at 252.  The "opponent must do more

14  than simply show that there is some metaphysical doubt as to the

15  material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

16  475 U.S. 574, 586 (1986).  "Only disputes over facts that might affect

17  the outcome of the suit under the governing law will properly preclude

18  the entry of summary judgment."  Anderson, 477 U.S. at 248.

19      "[A] district court is not entitled to weigh the evidence and

20  resolve disputed underlying factual issues."  Chevron Corp. v.

21  Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992).  The evidence of

22  the nonmovant is to be believed, and all justifiable inferences are to

23  be drawn in favor of the nonmovant.  Anderson, 477 U.S. at 255.  "On

24  the other hand, the movant's uncontradicted factual allegations

25  ordinarily are accepted."  John v. City of El Monte, 515 F.3d 936, 941

26  (9th Cir. 2007).  Further, the court must view the evidence presented

27  "through the prism of the substantive evidentiary burden."  Anderson,

28  477 U.S. at 254.

1    In a patent case, the infringement analysis involves two steps.

2  First, the court must construe the patent claims at issue; second, the

3  properly construed claims must be compared to the allegedly infringing

4  device.  Planet Bingo, LLC v. Gametech Int'l, Inc., 472 F.3d 1338,

5  1341 (Fed. Cir. 2006); Markman v. Westview Instruments, Inc., 52 F.3d

6  967, 976 (Fed. Cir. 1995).  The first step, claim construction, is a

7  question of law.  Planet Bingo, 472 F.3d at 1341.  While the second

8  step is a fact question, summary judgment is nonetheless appropriate

9  when a reasonable jury could reach only one conclusion regarding

10  infringement.  Techsearch, L.L.C. v. Intel Corp., 286 F.3d 1360, 1369

11  (Fed. Cir. 2002).  Summary judgment is also appropriate if "the patent

12  owner's proof is deficient in meeting an essential part of the legal

13  standard for infringement, because such failure will render all other

14  facts immaterial."  Id.

## III.  DISCUSSION

16    As noted, patent infringement analysis is a two-step process.  In

17  the instant case, the first step of that process was completed on

18  April 8, 2008, when the Court issued its Claim Construction Order.

19  Thus, what remains is to compare the construed claims to the allegedly

20  infringing device, to determine "whether all of the limitations of at

21  least one claim are present, either literally or by a substantial

22  equivalent, in the accused device."  Teleflex, Inc. v. Ficosa North

23  America Corp., 299 F.3d 1313, 1323 (Fed. Cir. 2002).  Defendants argue

24  that the Atico CMS does not infringe the '626 patent either literally

25  or under the doctrine of equivalents; each possibility will be

26  discussed in turn.

27  **A.    There Is No Literal Infringement**

28    To prove literal infringement, a patentee must demonstrate that

8

1  "the accused device contains every limitation in the asserted

2  claims. . . . If even one limitation is missing or not met as claimed,

3  there is no literal infringement."  <u>Mas-Hamilton Group v. LaGard,</u>

4  <u>Inc.</u>, 156 F.3d 1206, 1211 (Fed. Cir. 1998) (internal citations

5  omitted).  "[E]ach limitation of the claim must be met by the accused

6  device exactly, any deviation from the claim precluding a finding of

7  infringement."  <u>Lantech, Inc. v. Keip Machine Co.</u>, 32 F.3d 542, 547

8  (Fed. Cir. 1994).

9      Here, Defendants focus on two patent terms construed by the Court

10  in its Claim Construction Order:  "at least two vertical connecting

11  holes," and "at least two supporting through slots."  The parties

12  agree that these terms limit every asserted claim in the '626 Patent.

13  (Pl.'s Statement of Genuine Issues in Opp'n to Defs.' Mot. for Summ.

14  J. of Noninfringement ("SGI"), ¶ 2.)  Thus, if one of these

15  limitations is not met by the accused device, the Atico CMS, then

16  there is no literal infringement.

17      However, the parties look at the exact same device and see

18  fundamentally opposite things, as if the Atico CMS were a sort of

19  Rorschach test.  According to Defendants, the Atico CMS does not

20  infringe because it does not have either "at least two vertical

21  connecting holes" or "at least two supporting through slots."  Looking

22  at the exact same device, meanwhile, Plaintiff argues that the Atico

23  CMS does have "two vertical connecting holes" and "two supporting

24  through slots."  Defendants see just one vertical connecting hole, and

25  just one supporting through slot; Plaintiff, on the other hand, sees

26  two vertical connecting holes, and two supporting through slots.  The

27  patent requires "at least two" of each, so if Defendant is right,

28  there is no literal infringement, and if Plaintiff is right, there is.

1  See Lantech, 32 F.3d at 546-47 (holding that device using a single

2  conveyor did not literally infringe patent claims requiring "at least

3  two" conveyors; "the term 'at least two' sets forth the minimum number

4  of a particular element required").

5      Unfortunately for Plaintiff, however, no reasonable jury could

6  conclude that the Atico CMS has either two vertical connecting holes

7  or two supporting through slots, as those terms have been construed by

8  the Court.  The Claim Construction Order described a "vertical

9  connecting hole" and an "inclined supporting hole" as "essentially

10 abstractions that together define a single opening created by the

11 intersecting vertical and inclined holes -- the 'supporting through

12 slots' of the patent."  (Claim Construction Order at 5).  While

13 individually the "vertical connecting hole" and the "inclined

14 supporting hole" may not be bounded in all directions by material, the

15 "larger 'supporting through slot' created by the intersecting holes is

16 well-defined and bounded by material."  (Id.)  The Court specifically

17 rejected Plaintiff's argument that the "supporting through slots" were

18 not required to have distinct boundaries, finding instead that "two"

19 means "two separate and distinct slots."  (Id. at 8-9.)  Thus the "at

20 least two supporting through slots" required by all the claims of the

21 '626 patent could not be "one opening that is a combination of 'two'

22 openings."  (Id. at 9.)  The Claim Construction Order leaves no doubt;

23 the '626 patent requires that the CMS have at least two -- i.e., not

24 one -- "supporting through slots," each of which must be separate,

25 distinct, and bounded in all directions by material.  Further, while

26 each of the "at least two vertical connecting holes" may overlap with

27 one of the "at least two inclined supporting holes," the vertical

28 connecting holes may not overlap with each other to form one large

1  vertical connecting hole.

2      One look at the Atico CMS is enough to show that it does not have

3  either two vertical connecting holes or two supporting through slots.

4  It has one opening; that is, the supporting through slots are not

5  separate and distinct, and have no boundary between them.  When the

6  stems (or chair legs) passing through the Atico CMS are in the

7  vertical position, they are both in the same hole, with no material

8  between them at all.  No reasonable jury could look at that one

9  vertical connecting hole, or that one through slot opening, and find

10 that there are really two holes, or two openings.

11      Plaintiff argues that the "sliver" of material between the two

12 supporting through slots in its device is merely "cosmetic," and its

13 removal from the Atico CMS merely an "insignificant and unnecessary

14 alteration."  (Pl.'s Mem. of Ps. & As. in Opp'n to Defs. Atico Int'l

15 U.S.A., Inc.'s and Longs Drug Stores' Mot. for Summ. J. of

16 Noninfringement ("Pl.'s Opp'n"), at 12.)  Regardless of whether the

17 change was cosmetic, however, the fact remains that the Atico CMS does

18 not meet the literal terms of any claim in the '626 patent:  the '626

19 patent requires at least two openings, and the Atico patent has just

20 one.  As Defendants repeatedly point out, "one" is not "two."[2]  Nor is

21 the conclusory declaration of Plaintiff's expert, Dr. Gupta,

22 sufficient evidence to the contrary.  The fact that Dr. Gupta was able

23 to superimpose two circular dotted lines on a picture of the single

24 vertical connecting hole in the Atico CMS does not transform the

25

26      [2]Further, Plaintiff casts doubt on its own argument that the
   material found between the two supporting through slots in its
27 device is just cosmetic, suggesting that the elimination of this
   "sliver" may "lessen[] the structural value of the device."
28 (Pl.'s Opp'n at 11.)

1  single hole into two holes.  (<u>See</u> Decl. of Dr. Vijay Gupta in Supp. of

2  Tofasco's Opp'n to Defs.' Mot. for Summ. J. of Noninfringement ("Gupta

3  Decl."), at Exh. B.)

4       In sum, there is no genuine issue of material fact as to the

5  question of literal infringement.  No reasonable jury could find that

6  the Atico CMS contains every element in the asserted claims of the

7  '626 patent.

8  **B.    There Is No Infringement Under the Doctrine of Equivalents**

9       Defendants also argue that there is no infringement under the

10 doctrine of equivalents.  Generally, infringement under the doctrine

11 of equivalents requires that the accused product contain each element

12 of the claim or its equivalent.  <u>Warner-Jenkinson Co. v. Hilton Davis</u>

13 <u>Chem. Co.</u>, 520 U.S. 17, 40 (1997).  The Supreme Court has endorsed two

14 tests for determining whether the doctrine of equivalents applies --

15 the "insubstantial differences" test, and the "triple identity" test -

16 - either of which may be more suitable in a particular case, depending

17 on the facts.  <u>Id.</u>; <u>Festo Corp. v. Shoketzu Kinzoko Kogyo Kabushiki</u>

18 <u>Co.</u>, 493 F.3d 1368, 1377 (Fed. Cir. 2007) ("<u>Festo 2007</u>").  Under the

19 "insubstantial differences" test, "the doctrine of equivalents applies

20 when the equivalent represents an 'insubstantial' change from the

21 claim language."  <u>Festo 2007</u>, 497 F.3d at 1377.  Thus the doctrine may

22 be invoked by a patentee "to proceed against the producer of a device

23 if it performs substantially the same function in substantially the

24 same way to obtain the same result."  <u>Id.</u> (internal quotations

25 omitted).  The "triple identity" test, on the other hand, "focuses on

26 'the <u>function</u> served by a particular claim element, the <u>way</u> that

27 element serves that function, and the <u>result</u> thus obtained by that

28 element.'"  <u>Id.</u> (quoting <u>Warner-Jenkinson</u>, 520 U.S. at 39).

1    Regardless of which test is appropriate, however, "[t]he

2 determination of infringement under the doctrine of equivalents is

3 limited by two primary legal doctrines, prosecution history estoppel

4 and the 'all elements' rule . . . ." Depuy Spine, Inc. v. Medtronic

5 Sofamor Danek, Inc., 469 F.3d 1005, 1013 (Fed. Cir. 2006).  Defendants

6 here claim that both prosecution history estoppel and the "all

7 elements" rule mandate a finding of noninfringement.

8    **1.    Prosecution History Estoppel**

9    Prosecution history estoppel "'limits the range of equivalents

10 available to a patentee by preventing recapture of subject matter

11 surrendered during prosecution of the patent.'"  Festo 2007, 493 F.3d

12 at 1377 (quoting Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d

13 1570, 1579 (Fed. Cir. 1995)).  The patentee bears the burden of

14 establishing "that the reason for the amendment was unrelated to

15 patentability."  Id.   Failure to meet this burden results in a

16 presumption "that the patentee 'had a substantial reason related to

17 patentability for including the limiting element added by amendment.'"

18 Id. (quoting Warner-Jenkinson, 520 U.S. at 33).

19    The existence of "a substantial reason related to patentability"

20 would, under the doctrine of prosecution history estoppel, "'bar the

21 application of the doctrine of equivalents as to that element,'"

22 unless one of three exceptions is met.  Id. (quoting Warner-Jenkinson,

23 520 U.S. at 33).  As explained by the Supreme Court in Festo Corp. v.

24 Shoketzu Kinzoko Kogyo Kabushiki Co., 535 U.S. 722 (2002) ("Festo

25 2002"), the three possible exceptions are:  (1) that the claimed

26 equivalent was not foreseeable at the time of the patent application;

27 (2) that "the rationale underlying the amendment . . . bear[s] no more

28 than a tangential relation to the equivalent in question"; or (3) that

1 "some other reason suggest[s] that the patentee could not reasonably

2 be expected to have described the insubstantial substitute in

3 question."  Festo 2002, 535 U.S. at 740-41.

4      Here, Defendants point to the fact that the initial application

5 for what eventually became the '626 patent was rejected, and only

6 approved after the claims were amended.  Specifically, independent

7 claim 1 was amended to include the limitation that "a diameter of each

8 of said vertical connecting holes is substantially equal to a diameter

9 of each of said stems and said inclined supporting holes."  (Scheffel

10 Decl., Exh. L, at 112.)  Plaintiff makes no real effort to argue that

11 this change was not made for "a substantial reason related to

12 patentability," simply asserting that the amended language was not a

13 "narrowing" of the claims it sought to patent.  However, independent

14 claim 1 was initially rejected, *inter alia*, as unpatentable under 35

15 U.S.C. § 103(a), in part because the prior art taught a cross-member

16 "adapted to connect at least two elongated stems of furniture

17 including oppositely inclined holes and a vertical connecting hole."

18 (Scheffel Decl., Exh. L, at 103.)  To overcome the objections, the

19 patentee relied on the new language limiting the diameter of the

20 vertical connecting holes, specifically distinguishing the prior art

21 having "oppositely inclined holes and a vertical connecting hole" from

22 "the circular holes or slots fitting with the diameter of the

23 respective stem as claimed in the presently amended claim 1."

24 (Scheffel Decl., Exh. L, at 115.)  As the patent was eventually

25 granted for the amended claims, it appears this argument was

26 successful.  The applicant's deliberate abandonment of the attempt to

27 include vertical connecting holes not "fitt[ed] with the diameter of

28 the respective stem" within the scope of the patent thus appears to

1  have been a necessary narrowing of the scope of the patent.  Nor can

2  it reasonably be argued that a single hole through which multiple

3  stems can pass, such as is present in the Atico CMS, is "substantially

4  equal to a diameter of each of said stems."

5      Thus, the patent appears to have been narrowed during prosecution

6  in such a way as to exclude the very design Plaintiffs now want to

7  argue is "equivalent" to the claims of the '626 patent.  As Plaintiff

8  makes no attempt whatsoever to argue that any of the three exceptions

9  applies, the Court must find that Plaintiff has not met its burden of

10 rebutting the application of prosecution history estoppel in this

11 case.  Accordingly, Plaintiff is estopped from arguing that the Atico

12 CMS infringes the '626 patent under the doctrine of equivalents.

13      **2.    The "All Elements" Rule**

14      Defendants also argue that the "all elements" rule mandates a

15 finding of noninfringement.  This rule "attempts to balance the

16 doctrine of equivalents with the basic patent law principle that claim

17 language defines the scope of an invention and every limitation is

18 material."  Depuy Spine, 469 F.3d at 1016.  Relying on Warner-

19 Jenkinson, 520 U.S. at 29, Defendants argue that reading the

20 limitation of "at least two" holes or openings to be equivalent to

21 "one" hole or opening would "entirely vitiate" an element of the

22 disputed claims.  (Defs.' Mem. of Ps. & As. in Supp. of Defs. Atico &

23 Longs' Mot. for Summ. J. of Non-Infringement, or, in the Alternative,

24 Mot. for Partial Summ. J. (Defs.' Mem."), at 13.)  Thus, they argue,

25 summary judgment is appropriate, since "if a theory of equivalence

26 would entirely vitiate a particular claim element, partial or complete

27 judgment should be rendered by the court."  Warner-Jenkinson, 520 U.S.

28 at 39 n. 8.

1      Whatever other arguments could have been made that the Atico CMS

2   is somehow equivalent to the claims of the '626 patent, Plaintiff has

3   chosen to pursue a line of argument guaranteed not to find success.

4   That is, Plaintiff argues that Defendants' "all elements" argument "is

5   based on a [sic] false premises -- that the Atico CMSS has just 'one

6   hole.'  That overly-simplistic assertion is false, and the only

7   admissible evidence in the record demonstrates that the Atico CMSS

8   does have two inclined holes, vertical holes and through slots."

9   (Pl.'s Opp'n at 17.)  As explained above, this is simply not the case.

10  The Atico CMS has one vertical connecting hole, not two, and one

11  supporting through slot, not two.

12      Here, again, Plaintiff bears the burden of showing that the

13  accused product, the Atico CMS, infringes under the doctrine of

14  equivalents.  Planet Bingo, 472 F.3d at 1344.  It has not met this

15  burden.  While the doctrine of equivalents "does provide additional

16  coverage for the exclusive right to protect a patent holder in the

17  event of an unforeseeable change," id., the difference between "one"

18  hole or opening and "two" holes or openings was certainly not

19  unforeseeable when the application for the '626 patent was submitted.

20  Thus, the '626 patent "contain[s] a distinct limitation, which was

21  part of the bargain when the patent issued.  This court cannot

22  overlook that limitation or expand the doctrine of equivalents beyond

23  its purpose to allow recapture of subject matter excluded by a

24  deliberate and foreseeable claim drafting decision."  Id.

25  Accordingly, the "all elements" rule asserted by Defendants

26  independently bars application of the doctrine of equivalents here.

27                    **IV.   CONCLUSION**

28      For the reasons set forth above, Defendants' Motion for Summary

16

1   Judgment of Noninfringement is hereby GRANTED.  The Atico CMS does not

2   infringe the '626 patent, either literally or under the doctrine of

3   equivalents.

4

5        **IT IS SO ORDERED.**

6

7   **DATED:     July 24, 2008**

8

9

10   _____

11                        **AUDREY B. COLLINS**

12              **UNITED STATES DISTRICT JUDGE**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28